**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT W. MOORE,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:14-CV-0684** |
| | : | **(JUDGE MARIANI)** |
| **AIR METHODS, INC. and PHPA OPEIU, LOCAL 109,** | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I. Procedural History

On March 4, 2014, Plaintiff, Robert W. Moore, brought suit against Air Methods, Inc. and Office & Professional Employees International Union, Local 109 ("Local 109"), alleging that he was wrongfully discharged by his employer, Air Methods, and that Local 109 breached its duty of fair representation owing to him by its failure to process a grievance on his behalf to final and binding arbitration under the terms of the Collective Bargaining Agreement between Air Methods and Local 109 and, further, by failing to act in a manner consistent with its duty of fair representation. (Compl., Doc. 1, Ex. A).

After the Plaintiff's Complaint was removed to federal court and answers were filed by both Air Methods and Local 109 (Docs. 4, 5), Air Methods filed a Motion for Judgment on the Pleadings (Doc. 10). Air Methods argued that the Plaintiff's claim is barred by the six-month statute of limitations adopted by the Supreme Court in *DelCostello v. International*

*Brotherhood of Teamsters*, and made applicable to hybrid claims such as those brought by the Plaintiff in this case under the Railway Labor Act, 45 U.S.C. § 158-188, by the Third Circuit in *Sisco v. Conrail*. (*See* Docs. 10, 11 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Sisco v. Conrail*, 732 F.2d 1188, 1193 (3d Cir. 1984))).

This Court, by Order dated June 26, 2014 (Doc. 19), converted Defendant Air Methods' Motion for Judgment on the Pleadings to a Motion for Summary Judgment in accordance with Fed. R. Civ. P. 12(d) and modified its prior Order granting a stay of discovery to allow a period of time for discovery of any material pertinent to the Defendant's Motion. At the conclusion of discovery, Local 109 filed a Motion for Summary Judgment (Doc. 25), as did Air Methods (Doc. 30).

Air Methods also filed a Motion for Sanctions (Doc. 33), in which Local 109 sought to join. (Doc. 40). By Order dated December 17, 2014, the Court granted Local 109's Motion to join in the Motion for Sanctions of Air Methods. (Doc. 43).

The Motions for Summary Judgment brought by Air Methods and Local 109 have been fully briefed and are ripe for disposition. Accordingly, for the reasons that follow, the Motions for Summary Judgment of Defendant, Air Methods, and Defendant, Local 109, will be granted. Defendants' Motion for Sanctions shall be addressed by separate memorandum.

## II. Statement of Undisputed Facts

Each Defendant submitted a Statement of Undisputed Facts as to which it contends there is no genuine issue for trial, as required by Local Rule 56.1. (Docs. 26, 32).

Plaintiff, in turn, submitted a Response to each statement (Docs. 28, 37).

Each Defendant's Statement of Material Facts will be separately treated. There is significant overlap since this is a hybrid wrongful discharge/breach of the duty of fair representation action with both Local 109 and Air Methods seeking summary judgment in their favor on the basis that Plaintiff's suit is time-barred by the applicable six-month statute of limitations.

### A. Statement of Material Facts of Local 109 and Plaintiff's Response

Plaintiff, Robert Moore, was employed by Air Methods, an air transportation business specializing in air ambulance operations, as a helicopter pilot beginning in 2004. (Local 109's St. of Mat. Facts ("Local 109 SOMF"), Doc. 26, ¶¶ 1, 3-4).

Defendant, Local 109, is a labor organization and the collective bargaining representative of certain pilots employed by Air Methods. (*Id.* at ¶¶ 5-6). The Plaintiff was a member of the bargaining unit represented by Local 109. (*Id.* at ¶ 7).

Air Methods and Local 109 had a collective bargaining relationship and had been parties to a number of collective bargaining agreements, including one which was effective from December 14, 2011 through December 31, 2013). (*Id.* at ¶ 8). Under that Collective Bargaining Agreement ("CBA"), the Plaintiff was subject to all rules, regulations and orders

of Air Methods. (*Id.* at ¶ 9). The CBA provided, in Section 9.1, that "[p]ilots may be subject to disciplinary action, up to and including discharge for just cause including violation or infraction of Company rules or policies, or for violating this Agreement." (*Id.* at ¶ 10).

The CBA contains a three-step procedure that sets forth how grievances are to be processed and further provides time limits within which a grievance to be filed over a pilot's discharge must be filed as well as an agreement that any grievance not filed within those time limits is waived and deemed null and void. Specifically, Sections 6.2 and 6.3.1 of the CBA provide:

Section 6.2:

> (a) In the event a non-probationary Pilot who has been discharged wishes to grieve such discharge, the grievance must be presented at Step 2 within seven (7) calendar days after the termination.

(Local 109 SOMF, ¶ 12).

Section 6.3.1 then states:

> (b) Any grievance not presented and processed in the manner, and within the time limits set forth above, shall be waived and deemed null and void provided, however, at any time in advance of the expiration of such time limit the parties may agree, by mutual written consent, to extend any time limit for a specified period of time. Compliance with all time limits specified in this Article shall be determined by the date of mailing as established by postmark.

(*Id.*; CBA, Doc. 26-1, Ex. 2, § 6.3.1).

Under the provisions of Article 6, Section 6.1 of the CBA, an unresolved grievance may be submitted by the Union at the System Board of Adjustment, where the grievance, if

unresolved by the Board, may be submitted to an arbitrator selected through the Federal Mediation and Conciliation Service. (Local 109 SOMF, ¶¶ 13, 14).

The Plaintiff in this case was incarcerated in the Carbon County Prison from December 3, 2011 until December 28, 2011 following a domestic dispute with his then-wife. (*Id.* at ¶ 15). Plaintiff was not scheduled to work from December 3, 2011 through December 8, 2011, but was scheduled to return to work on December 9, 2011. (*Id.* at ¶ 16). The Plaintiff, however, did not report to work on December 9, 2011 or any other date during his incarceration. (*Id.* at ¶ 17).

By December 12, 2011, the Plaintiff was aware that he had failed to report for work for three consecutive days. (*Id.* at ¶ 18). Plaintiff learned that his employment had been terminated on December 29, 2011 during a phone call with Larry Murphy, Program Manager for Air Methods. The phone call occurred after the Plaintiff's release from incarceration. (*Id.* at ¶ 19). Plaintiff received a termination letter from Air Methods which was forwarded to him by his estranged wife. (Local 109 SOMF, ¶ 20). He received the letter "within a few days of his release from incarceration." (*Id.*) The termination letter issued by Air Methods to the Plaintiff dated December 13, 2011 stated that Plaintiff had been discharged for failing to report off from work to his supervisor for three consecutive days. (*Id.* at ¶ 21). The Air Methods Employee Handbook on this subject provides as follows:

> Employees unable or unavailable to work due to illness are required to call their immediate supervisor or Administrative Assistant if applicable. If the employee is unable to call, someone else should call. Employees are expected to call in every day of an absence unless prior arrangements have

> been made with their supervisor. Failure to call for three or more consecutive days will be considered a voluntary resignation or job abandonment and supporting documentation will be sent to the employee advising them of their separation.

(*Id.* at ¶ 22).

The Plaintiff contacted Local 109 about his termination by e-mail during the first week of January of 2012. (*Id.* at ¶ 23).

On January 5, 2012, at Plaintiff's request, the Union filed a grievance on his behalf with regard to his termination. The grievance alleged that the Employer had discharged the Plaintiff without just cause in violation of the Collective Bargaining Agreement. (Local 109 SOMF, ¶ 24). The Union then advanced the grievance through the third step of the contractual procedure. The Employer denied the grievance at each such step. (*Id.* at ¶ 25). Immediately upon receipt of the Employer's third-step denial of the grievance on January 27, 2012, the Union sent the Employer a letter requesting that the Plaintiff's grievance be submitted to the System Board of Adjustment. (*Id.* at ¶ 26). The Union's Executive Board, however, on the advice of counsel, ultimately decided not to pursue the Plaintiff's grievance before the System Board of Adjustment or in arbitration. (*Id.* at ¶ 27). Plaintiff, in responding to this paragraph, states that he is "not in a position to admit or deny the allegations" because the Defendants asserted the attorney/client privilege in refusing to disclose any specific discussions between the Executive Board of the Union and its counsel. However, Plaintiff acknowledges that the deposition of former Union President Dan McDade "indicates

that the Union's executive board based their decision on advice of counsel." (Pl.'s Ans. to Local 109 SOMF, ¶ 27).

On April 5, 2012, Local 109, through Dan McDade, at the time Local 109's President, sent Plaintiff an e-mail stating, in part:

> I regret to inform you that the Union cannot help you further with your grievance for reasons stated in the attached letter which was mailed USPS and certified mail yesterday. I am very sorry but the timeliness of the grievance will not allow any chance of success.

(Local 109 SOMF, ¶ 28).

Attached to McDade's e-mail of April 5, 2012 to Plaintiff was a copy of a letter from Local 109 to Plaintiff that stated in part:

> The Executive Board of Office and Professional Employees International Union, Local 109 has carefully considered the merits of the outstanding grievance concerning your termination and consulted with its legal counsel. We regret to inform you that the Union will not take your grievance to arbitration or otherwise process it any further because it has no significant chance of success at arbitration.

(*Id.* at ¶ 29).

The letter concluded with the statement that "the Union will not take your grievance to the SBA, to arbitration, nor otherwise process it any further." (*Id.*). The Plaintiff received the April 5, 2012 e-mail and the attached letter from Local 109 the same day they were sent. Plaintiff later received another copy of the letter by certified mail. (*Id.* at ¶ 30).

On April 19, 2012, the Plaintiff sent McDade an e-mail requesting that the Union "reconsider" its decision not to process the grievance. (*Id.* at ¶ 31). The Union did not

reconsider its decision not to further process the grievance (*id.* at ¶ 32) and never responded to the Plaintiff's April 19, 2012 e-mail (*id.* at ¶ 33). Plaintiff denies the statement in Paragraph 35 of Local 109's Statement of Material Facts that the Union did not represent the Plaintiff with respect to his grievance after April 5, 2012. In support of his denial, Plaintiff asserts that he placed a phone call to Dan McDade after Local 109 had been placed in trusteeship and after McDade had been terminated from his position as President of the Local as a result of the trusteeship. (Pl.'s Ans. to Local 109 SOMF, ¶ 35).

Plaintiff admits he decided to consult a lawyer "when no one got back to him on his request for reconsideration." (*Id.* at ¶ 37). The parties agree that the Plaintiff first consulted a lawyer in August of 2013 and that, at that time, the Plaintiff learned from his attorney that a six-month limitation period applied to his claim. (Local 109 SOMF, ¶¶ 38, 39).

On December 16, 2013, Plaintiff initiated the instant suit in the Court of Common Pleas of Carbon County, Pennsylvania by filing a Praecipe for Writ of Summons.

In response to Local 109's assertion at Paragraph 41 of its Statement of Material Facts that the state court docket entries do not show that either defendant was served with a writ of summons, as required by the Pennsylvania Rules of Civil Procedure, Plaintiff responds that the Defendants were served with a copy of the Complaint rather than a writ of summons on March 4, 2014. (Pl.'s Ans. to Local 109 SOMF, ¶¶ 41, 42, 44).

On March 4, 2014, the Plaintiff filed a Complaint in this action in the Court of Common Pleas of Carbon County which was served upon Local 109 on March 18, 2014.

(Local 109 SOMF, ¶ 44). Plaintiff then served Defendant, Air Methods, on March 20, 2014, also by certified mail. (*Id.* at ¶ 45).

B. Statement of Undisputed Facts of Defendant, Air Methods

As in the case of the Statement of Material Facts filed by Local 109, it is undisputed that the Plaintiff was employed by Defendant, Air Methods, and represented by Local 109. (Air Method SOMF, ¶¶ 1-2). Likewise, it is undisputed that Plaintiff was arrested on December 3, 2011, and following his arrest, Plaintiff was incarcerated until December 28, 2011. (*Id.* at ¶¶ 3-4).

It is further undisputed that on December 13, 2011, the Plaintiff was terminated from Air Methods by letter of December 13, 2011; that on January 5, 2012, a grievance protesting the Plaintiff's termination was filed by Local 109; that Air Methods opposed the grievance and the Union processed it through the various steps of the grievance procedures. (*Id.* at ¶¶ 5-7). The parties agree that on March 21, 2012, the Plaintiff's attorney, George Dydynsky, sent a letter to the Union regarding Plaintiff's imprisonment and his failure to appear at work when scheduled. (*Id.* at ¶ 8). The letter states in part:

> It is my recollection and my records indicate that on December 7, 2011, I contacted the main office of Mr. Moore's employer, Air Methods Corporation, in Englewood, Colorado, at 303-792-7400. I explained to the persons I spoke with that Mr. Moore was arrested and placed into prison and I did not know when exactly he would be released. On and around the same date I also spoke with Steve Gray and/or Larry Murphy at 610-232-9251 and 570-807-6209 respectively explaining Mr. Moore's situation to them. I believe it was Mr. Murphy who advised that I should call the Air Methods Corporation in Colorado.

(Doc. 32-4).

Air Methods and the Plaintiff agree that it is undisputed that on April 5, 2012, the Plaintiff by e-mail inquired with the Union as to the status of his grievance. (Air Method SOMF, ¶ 10). The e-mail stated: "Do you have any updated information regarding the grievance you filed for me? Is it still in progress?" (Doc. 32-3). The Union, through McDade, responded by e-mail: "I regret to inform you that the Union cannot help you further with your grievance for reasons stated in the attached letter which was mailed USPS and certified mail yesterday. I am very sorry but the timeliness of the grievance will not allow any chance of success." (*Id.*; Air Method SOMF, ¶ 11).

On or about April 5, 2012, the Plaintiff received a letter of then-Union President McDade which informed him that the Union would not pursue his grievance any further. (Air Method SOMF, ¶ 12). The letter (Doc. 32-5) cited Section 6.2 of the Collective Bargaining Agreement, which provides that "[i]n the event a non-probationary Pilot who has been discharged wishes to grieve such a discharge, the grievance must be presented at Step 2 within seven (7) calendar days after the termination." The letter then continues:

> Thus, you needed to file your grievance by December 20, 2011. However, your grievance was not filed until January 5, 2012 – sixteen (16) days late. Air Methods has always strictly enforced the contractual time limits for the grievance procedure. You have provided no reason why you did not contact the Union in time to file your grievance within the seven (7) day contractual time limit. Unfortunately, your grievance is plainly untimely and has no reasonable chance of success at the System Board of Adjustment (SBA) or at arbitration.

> Regretfully, I must inform you that, for the reasons stated above, the Union will not take your grievance to the SBA, to arbitration, nor otherwise process it any further.

(Doc. 32-5).

On April 19, the Plaintiff e-mailed Union President McDade and asked him to reconsider the Grievance. The Plaintiff did not receive a response to his April 19, 2012 e-mail from Mr. McDade or any other person at the Union. (Air Method SOMF, ¶¶ 13, 15). The Plaintiff had no communication with the Union between April 5, 2012 and April 19, 2012 when he sent the e-mail to McDade. (*Id.* at ¶ 14). The Plaintiff had no communications with anyone at Air Methods regarding his grievance. (*Id.* at ¶ 18). Plaintiff disputes that he had no facts which would have led him to believe the Union would respond to his request for reconsideration and that he only "hoped" that it would, although he did so testify. (Pl.'s Ans. to Air Method's SOMF, Doc. 37, ¶ 17; Dep. of Moore, Doc. 26-1, at 145:12-25; 146:1-4).

**III. Summary Judgment Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. Rather, the opposing party must point to a factual dispute requiring trial and the district court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-1031 (9th Cir. 2001); *see also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

## IV. Analysis

It is well established, and all parties to this matter agree, that the Plaintiff's claims raised herein for breach of the duty of fair representation by Local 109 and for wrongful discharge under the Collective Bargaining Agreement by Air Methods, Inc. are governed by the six-month statute of limitations adopted by the Supreme Court in *DelCostello v. International Brotherhood of Teamsters,* and made applicable to hybrid claims such as that brought by the Plaintiff here under the Railway Labor Act, 45 U.S.C. § 151, *et seq.,* by the Third Circuit in *Sisco v. Conrail.* The Motions for Summary Judgment of Local 109 and Air Methods are addressed together in this Memorandum Opinion because of the interrelationship between Plaintiff's claims against his Employer and his Union. In *DelCostello*, the Court explained:

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" [*United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 66-67, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)] (Stewart, J., concurring in the judgment), quoting [*Hines v. Anchor Motor Freight,* 424 U.S. 554, 570-571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)]. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

462 U.S. at 164-165.

In *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), the Court held that the six-month limitations period "commences 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" The Court wrote:

> In the typical hybrid suit where the employee sues the employer under section 301 for breach of the collective bargaining contract and the union for breach of its duty of fair representation for failing to process the employee's claim through the contract dispute resolution process pursuant to the theory enunciated in *Vaca v. Sipes,* 386 U.S. 171, 184–87, 87 S.Ct. 903, 913-15, 17 L.Ed.2d 842 (1967), the same statute of limitations is applicable to both defendants. *See Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees,* 831 F.2d 429, 433 (3d Cir. 1987). The six-month period commences "'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " *Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir. 1986) (quoting *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir. 1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)). Therefore, where an employee sues a union for breach of its duty of fair representation, the limitations period commences when "'the plaintiff receives notice that the union will proceed no further with the grievance.'" *Hersh,* 789 F.2d at 232 (quoting *Bruch v. United Steelworkers of America,* 583 F.Supp. 668, 670 (E.D.Pa. 1984)). Even if there has been no explicit notice, the statute of limitations begins to run when "the futility of further union appeals became apparent or should have become apparent." *Scott v. Local 863, International Brotherhood of Teamsters,* 725 F.2d 226, 229 (3d Cir. 1984).

903 F.2d 260.

In this case, the relevant and indeed dispositive facts are not in dispute. The Plaintiff was arrested on December 3, 2011 as a result of a domestic dispute. As a consequence, he was imprisoned in the Carbon County Prison from December 11, 2011 through December 28, 2011. The Plaintiff, a helicopter pilot, was scheduled to report for work on December 9,

2011, in accordance with a predetermined schedule. As a result of his incarceration, he did not report for work. The Plaintiff also failed to call his employer for three or more consecutive days (Local 109 SOMF, ¶ 21), as required by the Employee Handbook which provides: "Failure to call for three or more consecutive days will be considered a voluntary resignation or job abandonment and supporting documentation will be sent to the employee advising them of their separation." (*Id.* at ¶ 22).[1]

On December 29, 2011, the Plaintiff, in a phone call with company Program Manager, Larry Murphy, learned he had been discharged. (*Id.* at ¶ 19). The letter of discharge had been issued December 13, 2011 and states, in relevant part:

> You were scheduled to report to work on December 9, 2011 for your regular shift. On that date, you failed to report as scheduled and failed to contact your immediate supervisor to let him know you would not be reporting to work. You subsequently have not reported for additional shifts as scheduled.
>
> The company has tried several times to reach you over the course of the last few days but have been unsuccessful. Your absence and lack of communication leads the company to conclude that you have voluntarily resigned from Air Methods. Your termination is effective immediately. . . .

[1] Plaintiff admits that the Handbook to which he was subject provides that "[e]mployees are expected to call in every day of an absence unless prior arrangements have been made with their supervisor," and that "[f]ailure to call for three or more consecutive days will be considered a voluntary resignation or job abandonment . . . ." (Local 109 SOMF, ¶ 22). However, Plaintiff, in his response to that paragraph, asserts that, at his magistrate's hearing on December 7, 2011, he asked his lead pilot who was with him, John Zedalias, to speak with Steve Gray, of Air Methods, to inform him he would not be in to work on Friday due to his incarceration. Plaintiff also states that he used the phone at the district magistrate's office on December 7, 2011 to contact Air Methods. (Pl.'s Ans. to Local 109 SOMF, ¶ 22). Plaintiff cites to pages 43 through 48 of his deposition. Those pages, however, have not been submitted by either the Plaintiff or by the Defendants. (*See* excerpts of Moore Dep. at Doc. 26-1 and 32-1). Even were the Court to credit the assertions by the Plaintiff referred to above, they do not create a material issue of fact sufficient to defeat summary judgment in this case since they do not affect the analysis of when the six-month limitations period commenced nor when it expired.

(Doc. 32-2; *see also,* Local 109 SOMF, ¶ 21).

The Plaintiff received the termination letter from Air Methods after it was forwarded to him by his estranged wife. (Local 109 SOMF, ¶ 20).

The Plaintiff contacted the Union during the first week of January, 2012, and, on January 5, 2012, the Union filed a grievance at Plaintiff's request, which asserted that the Grievant had been discharged without just cause in violation of the CBA.

Local 109 processed the grievance through the steps of the grievance procedure in the Collective Bargaining Agreement but was unable to resolve the grievance and secure reinstatement for the Plaintiff. The Union gave timely notice of its intent to submit the grievance to the System Board of Adjustment and its arbitration provisions as set forth in the CBA.

On April 5, 2012, the Plaintiff inquired by e-mail as to the status of the grievance which the Union had filed on his behalf. That same day, the Union, through McDade, sent the Plaintiff the following e-mail, stating in relevant part:

> I regret to inform you that the Union cannot help you further with your grievance for reasons stated in the attached letter which was mailed USPS and certified mail yesterday. I am very sorry but the timeliness of the grievance will not allow any chance of success.

(*Id.* at ¶ 28).

The letter which was attached to McDade's e-mail of April 5, 2012 and which was sent to the Plaintiff via United States and Certified Mail informed the Grievant that:

> The Executive Board of Office and Professional Employees International Union, Local 109 has carefully considered the merits of the outstanding grievance concerning your termination and consulted with its legal counsel. We regret to inform you that the Union will not take your grievance to arbitration or otherwise process it any further because it has no significant chance of success at arbitration.

(*Id.* at ¶ 29; Doc. 32-5).

The explanation for the Union's decision to proceed no further with the Grievance it had filed on behalf of the Plaintiff is then set forth in the body of the letter:

> Your employment with Air Methods was terminated in a letter from Air Methods Human Resources Generalist Marium Strott, dated December 13, 2011. A copy of that letter is attached. The termination was effective immediately. You filed a grievance protesting your termination on January 5, 2012. The grievance stated that your termination was unfair, unjust, and too severe. Air Methods answered the grievance by stating that you failed to report for work and did not contact management, being a no call-no show for three (3) consecutive days. Air Methods also maintained that you failed to respond to calls made to you by management and thereby abandoned your job. Air Methods further stated that your grievance was untimely because it was not filed within the contractual deadline.
>
> Section 6.2 of the collective bargaining agreement between Air Methods and Local 109 provides:
>
>> Section 6.2
>> In the event a non-probationary Pilot who has been discharged wishes to grieve such a discharge, the grievance must be presented at Step 2 within seven (7) calendar days after the termination.
>
> Thus, you needed to file your grievance by December 20, 2011. However, your grievance was not filed until January 5, 2012 —sixteen (l6) days late. Air Methods has always strictly enforced the contractual time limits for the grievance procedure. You have provided no reason why you did not contact the Union in time to file your grievance within the seven (7) day contractual time limit. Unfortunately, your grievance is plainly untimely and has no

> reasonable chance of success at the System Board of Adjustment (SBA) or at arbitration.

The letter closed with the statement:

> Regretfully, I must inform you that, for the reasons stated above, the Union will not take your grievance to the SBA, to arbitration, nor otherwise process it any further.

(*Id.*).

It is undisputed that the Plaintiff received the Union's April 5, 2012 e-mail as well as the letter of that same date quoted above.

On April 19, 2012, the Plaintiff sent McDade an e-mail requesting that the Union "reconsider" its decision not to further process the grievance. (Local 109 SOMF, ¶ 31). The Union did not respond to Plaintiff's April 19, 2012 e-mail. The Plaintiff decided to consult a lawyer when no representative of the Union got back to him on his request for reconsideration. Plaintiff admits that he first consulted a lawyer in August of 2013.

Local 109, in support of its Motion, argues that "[h]ere, Plaintiff admittedly received unequivocal notice that the Union would not submit his grievance to arbitration. He timely received the April 5, 2012, letter concluding that 'the Union will not take your grievance to arbitration or otherwise process it any further because it has no significant chance of success at arbitration.'" (Local 109 Br. in Supp. of Mot. for Summ. J., Doc. 27, at 6).

The Defendant also makes reference to the e-mail of then-President Local 109 President McDade of April 5, 2012, which informed the Plaintiff that "the Union cannot help you further with your grievance. . . ." (*Id.*) From these undisputed facts, Local 109 argues

that "[n]o reasonable fact-finder could conclude that these communications failed to put Plaintiff on notice that the Union would not pursue his grievance further." (*Id.*)

Further, both Local 109 and Air Methods argue that Plaintiff acknowledged the unequivocal finality of the Union's decision when he requested of President McDade by e-mail that the Union "reconsider the grievance." (*Id.*at 6-7; Air Method's Br. in Supp. of Mot. for Summ. J., Doc. 31, at 5). Both Defendants argue that the Plaintiff would not have requested the Union to reconsider its decision had he not understood that such a decision had been made in the first place. (*Id.*).

The Plaintiff, in response, initially and unhelpfully focuses on facts which he asserts show that he could not have timely filed his grievance since he was incarcerated and that his attorney made phone calls to various representatives of Air Methods. (Pl.'s Br. in Opp. to Local 109's Mot. for Summ. J., Doc. 29, at 4-6). But Plaintiff must remember that the merits of his grievance are not here at issue. Nor is the issue of whether there exist equitable circumstances that could be offered to excuse what appears to be a clearly untimely grievance. Instead, what is solely before this Court is whether the Plaintiff's breach of contract/breach of duty fair representation claim is time-barred as having been filed beyond the applicable six-month statute of limitations. With respect to the issue of the timeliness of Plaintiff's suit, Plaintiff offers no serious argument that he did not receive unequivocal notice on April 5, 2012 through the e-mail of Local 109 President McDade and the attached April 5, 2012 letter which he also received via United States Mail that the Union would "proceed no

further with the grievance." *See Hersh*, 789 F.2d at 232; *Vadino*, 903 F.2d at 260. Thus, applying the six-month statute of limitations as commencing on Plaintiff's receipt of the April 5, 2012 e-mail from McDade along with the attached letter of that same date, the limitations period expired on October 5, 2012. Plaintiff filed a Praecipe for Writ of Summons in state court on December 16, 2013, although it is undisputed that the Writ of Summons itself was not served upon either Defendant. Instead, the Plaintiff filed a Complaint in the Court of Common Pleas of Carbon County on March 4, 2014, which was then served on March 18, 2014 on Local 109 and on March 20, 2014 on Air Methods (Local 109 SOMF, ¶¶ 43-45).

Local 109 argues that the point at which "'the futility of further union appeals became apparent or should have become apparent'" was when Plaintiff "received unambiguous notice that the Union would not further pursue his grievance." (Doc. 27, at 7 (quoting *Scott v. Local 863, Int'l Bhd. of Teamsters*, 725 F.2d 226, 229 (3d Cir. 1984))). While the Union cites to the decision in *Scott*, as the Court made clear in *Vadino*, *Scott* has application to a circumstance not present here, i.e., where there has been no "explicit notice" from the Union that it will proceed no further with the employee's grievance. Thus, in *Vadino*, the Court, citing *Scott*, stated:

> Even if there has been no explicit notice, the statute of limitations begins to run when 'the futility of further union appeals became apparent or should have become apparent.' *Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3rd. Cir. 1984).

903 F.3d 260.

Here, under the straight-forward language of the Court in *Vadino*, the limitations period commenced when the Plaintiff received notice that the Union would proceed no further with the grievance. (*See id.* at 260). The April 5, 2012 e-mail from the Union and the attached letter of that same date leave no question that Local 109 provided Plaintiff Moore with notice that it would not submit his grievance to the System Board of Adjustment or to arbitration and that it would proceed no further with the grievance. The Union's notifications to Plaintiff Moore present clear language that placed him on notice that he could not expect any further action by the Union. Unlike the circumstances in *Scott,* where the Union's Executive Board agreed to hear the employee's appeal of the Local Union's initial determination that it would not advance his grievance to arbitration, here there is no difficulty in establishing that there was a final and unambiguous determination by the Union not to pursue the Plaintiff's grievance further, which was conveyed to him by e-mail and letter. Nor was there any further action or statement after that which would suggest that the Union had in any way altered its stance, even to the extent of granting reconsideration of its decision pursuant to the Plaintiff's request that it do so. Rather, Local 109 never responded to the Plaintiff's request for reconsideration, an act that is entirely consistent with the conclusive determination that it made and conveyed to the Plaintiff by its April 5, 2012 e-mail and letter. The Union correctly asserts that it "gave Plaintiff clear notice that his grievance would not be pursued and never reconsidered its decision, as the defendant union in *Scott* did" (Doc. 27, at 8), nor is there any evidence in the record that an internal

union's appeals process was available to the Plaintiff or, if one existed, that he availed himself of it.

Nonetheless, the Plaintiff, citing *Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees*, 831 F.2d 429, 436 (3d Cir. 1987), asserts that his claim for breach of the duty of fair representation did not accrue while the Union continued to actively represent him and proffered "rays of hope" to the employee that his cause will ultimately prevail. (Doc. 29, at 6-9). However, nothing in the record creates a genuine issue of fact for trial that any such "ray of hope" was offered to the Plaintiff. It bears repeating that Plaintiff does not dispute that he received the Union's April 5, 2012 e-mail and letter wherein he was informed unequivocally that the Union would no longer represent him or pursue his grievance. Likewise, it is undisputed that Plaintiff admits he received no response to his April 19, 2012 e-mail asking that the decision not to pursue his grievance be reconsidered.

Moreover, Plaintiff, at his deposition, fails to come forward with evidence which would show a genuine issue for trial with respect to whether the Union, by its statements or actions, gave the Plaintiff any expectation or "hope" that it would reconsider its decision not to pursue his grievance as stated in its April 5, 2012 e-mail and letter. The Plaintiff's deposition testimony is as follows:

> Q. What facts led you to believe that from April 19, 2012 forward someone at the union headquarters was reviewing your request for a reconsideration?
>
> A. Because they never had sent a response to my e-mail.

Q. Okay. Did you ever have any facts that led you to believe that you would receive a response?

A. I had no facts that I would receive. I was – I – I was hoping that they would respond to it.

Q. So you were hoping that they would?

A. Yeah.

Q. Okay. But you had no basis to believe that they were going to, did you?

A. I had no basis to believe or not believe it.

(Dep. of Moore, at 145:12-25; 146:1-4).

The Plaintiff testified that in August of 2013, he "finally felt [he] should speak to a lawyer." (*Id.* at 147:20-25). When asked what prompted him to speak to a lawyer in August of 2013, the Plaintiff responded "because I had not heard from the union." (*Id.* at 148:4-5). Thus, the Plaintiff waited until August of 2013 to speak to an attorney after he received no response to his request for reconsideration set forth in his e-mail of April 19, 2012. Plaintiff's decision to wait almost 16 months after his April 19, 2012 e-mail to Local 109 went unanswered presents a delay that cannot be justified by any evidence in the record that could create an issue of fact as to when the Plaintiff knew or should have known that the Union would take no further action on his behalf or that further appeals to the Union would be futile. Indeed, Plaintiff knew of the Union's decision to proceed no further on his behalf by the Union's e-mail of April 5, 2012 and its letter of that same date. Any suggestion that the Union did anything to call into question the finality of its decision is not supported by the

record in this case. Moreover, the Union's failure to respond to the Plaintiff's April 19, 2012 request for reconsideration e-mail cannot be construed as anything other than a conscious reaffirmation of its position as stated in its April 5, 2012 communications to the Plaintiff. Plaintiff admits as much when he testified that he had no facts that led him to believe that he would receive a response to his April 19, 2012 e-mail seeking reconsideration and that, instead, he was "hoping that they would respond to it." (*Id.* at 145:18-23).

The Plaintiff filed a Praecipe for Writ of Summons on December 16, 2013, 20 months and 11 days after the issuance by the Union of its April 5, 2012 e-mail and letter to the Plaintiff informing him that it would proceed no further with his grievance and 19 months and 27 days after the Plaintiff's April 19, 2012 e-mail to the Union asking that it reconsider its decision. The record does not show that the Writ of Summons was ever served upon the Defendants by the Plaintiff. In *Sardo v. Smith*, 851 A.2d 168 (Pa. Super. 2004), the Court made clear that in order to toll the statute of limitations, "'the law remains that plaintiffs need only make a good faith effort to serve defendants, which must be determined by the court using its sound discretion on a case-by-case basis.'" *Sardo*, 822 A.2d at 170 (quoting *Parr v. Roman*, 822 A.2d 78, 80-81 (Pa. Super. 2003)).

Here, the record contains no evidence as to whether the Plaintiff made a good faith effort to serve the summons upon the Defendants in this case. Plaintiff's only response is that the Defendants were served with a copy of the *Complaint* with service on Local 109 on March 18, 2014 and on Air Methods on March 20, 2014. (Local 109 SOMF, ¶¶ 44, 45). The

parties dispute whether the filing date of the Complaint should be deemed to be December 16, 2013 or March 4, 2014. This issue is of no moment, since the Plaintiff's suit is barred under any calculation of the commencement and expiration of the six-month statute of limitations. Whether Plaintiff's action is deemed filed on December 16, 2013 or March 4, 2014, Plaintiff's suit is time barred, given that the six-month statute of limitations commenced to run on Plaintiff's receipt on April 5, 2012 of the Union's e-mail and letter informing him that no further action would be taken on his behalf. Thus, from any vantage point, the Plaintiff has failed to file his action within the six-month limitations period applicable to this case.

In short, there is no evidence of record to support the Plaintiff's contention that he reasonably believed that the Union was continuing to represent him beyond the Union's issuance of its April 5, 2012 e-mail and letter informing him in the clearest language that the Union was not going to pursue his grievance further or take any further action on his behalf.[2]

---

[2] Nor can the Plaintiff rely on the deposition testimony of Dan McDade who testified that he received a phone call from the Plaintiff some time in 2013 when he was no longer an officer of the Union as a result of the placement of the Union in trusteeship by its International. In that conversation, the date of which was uncertain to McDade, he stated:

> It was spring, summer, fall. Then it was just like out of the blue, and I answered the phone, and he said blah, blah, blah. What's, something about the Union, you know, can you guys blah, blah.
>
> I said, well, oh, I said, well, your case is already, it's way, shooo, done. And I said, I don't know, I can't reconsider anything. I'm not even the president. I'm not part of the union. If you want to talk to the union, you got to talk to Steve Rush.

(Dep. of Dan McDade, Doc. 29-2, at 36:18-25, 37:1-2).

Since Plaintiff's suit was clearly filed outside of the statute of limitations, irrespective of whether the unserved Praecipe for a Writ of Summons filed on December 16, 2013 or the Complaint filed on March 4, 2014 is the focal point for the six-month calculation, summary judgment must be entered in favor of Local 109 and Air Methods and against the Plaintiff. Plaintiff had unequivocal notice as of April 5, 2012 that the Union would take no further action on his behalf of any kind. The statute of limitations commenced to run as of that date and Plaintiff's subsequent lawsuit is time-barred.

Therefore, the Motion for Summary Judgment of Local 109 (Doc. 25) and the Motion for Summary Judgment of Air Methods (Doc. 30) will both be granted.

A separate Order follows.

Robert D. Mariani
United States District Judge

For his part, Plaintiff Moore made no reference to such a conversation in his deposition. This testimony, however, cannot reasonably be understood as providing the basis for a belief on the part of the Plaintiff that the Union was still representing him or that he did not know that all efforts on his behalf had ceased as of the April 5, 2012 e-mail and letter to him from the Union.