## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. MOORE,                          :
                                          :
        **Plaintiff**                      :
                                          :
   v.                                 :     **3:14-CV-0684**
                                          :     **(JUDGE MARIANI)**
AIR METHODS, INC. and                     :
PHPA OPEIU, LOCAL 109,                     :
                                          :
       **Defendants**                    :

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is the Motion for Sanctions of Defendant, Air Methods, Inc. (Doc. 33). Defendant, PHPA OPEIU Local 109 ("Local 109"), moved to join in Air Methods' Motion (Doc. 40), and was allowed to do so by Order of this Court on December 17, 2014 (Doc. 43).

Previously, this Court entered summary judgment in favor of Local 109 and Air Methods on the basis that Plaintiff had unequivocal notice as of April 5, 2012 that the Union would take no further action on his behalf of any kind. This Court ruled that the statute of limitations commenced to run as of April 5, 2012 and that Plaintiff's subsequent lawsuit was time-barred. (Docs. 44, 45).

## II. Air Methods' Motion for Sanctions

Air Methods seeks the imposition of sanctions under Federal Rule of Civil Procedure 11 as well as 28 U.S.C. § 1927. It submits that "[b]ecause Plaintiff's Complaint was not filed within the limitations period and there are no objectively reasonable legal or factual bases to find otherwise, Plaintiff and Mr. Russo failed to meet the standards of Rule 11 and Section 1927." (Air Methods' Br. in Supp. of Mot. for Sanctions, Doc. 34, at 6). Air Methods notes that "Plaintiff did not file his Complaint until March 4, 2014 – almost 17 months after the statute of limitations period passed." (*Id.* at 7).

Further, Air Methods makes reference to the Plaintiff's deposition testimony where Plaintiff, when asked whether he had any facts that led him to believe that he would receive a response to his April 19, 2012 e-mail to Local 109, answered: "A. I had no facts that I would receive. I was – I – I was hoping that they would respond to it.  Q. So you were hoping that they would?  A. Yeah. . . ." (*Id.* at 8; Dep. of Moore, at 145:12-25; 146:1-4). Accordingly, Air Methods argues that "Plaintiff did not have any evidence at the time of filing the Complaint, nor any objectively reasonable belief that such evidence would be uncovered through discovery, that would alter the accrual date of his claim." (Doc. 34, at 8).

Air Methods further argues that "[t]he absence of any objectively reasonable basis to toll the statute of limitations further evidences that Rule 11 sanctions are warranted." (*Id.*). Air Methods argues that Plaintiff's counsel "either failed to complete any 'reasonable investigation' or research as required by Rule 11 to discover the relevant statute of

2

limitations period or Mr. Russo did conduct an investigation into the facts, researched the relevant law, and knew Plaintiff's claim was barred by the statute of limitations, but chose to file the Complaint anyway. Both are objectively unreasonable and, therefore, violate Rule 11." (Id. at 9).

Air Methods similarly finds fault with Plaintiff and his counsel in their refusal to withdraw Plaintiff's Complaint after the close of discovery, arguing that "Plaintiff and Mr. Russo's failure to withdraw the Complaint, despite having specific notice that the allegations were not supported by law or fact, violates Rule 11 and Section 1927." (Id. at 11).

Air Methods continues in its brief in support of its motion to assail the conduct of Plaintiff and Plaintiff's counsel, arguing that "[i]t is not objectively reasonable for Plaintiff and Mr. Russo to maintain this action after being specifically informed via Air Methods' Motion for Judgment on the Pleadings that the claim was barred and after the discovery period revealed no exceptions to such bar." (Id. at 12).

Air Methods also seeks sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. In its brief, Air Methods asserts "[t]here can be no doubt Mr. Russo's refusal to withdraw the Complaint multiplied the proceedings in an unreasonable and vexatious manner, thereby increasing the cost of the proceedings because it required Air Methods to prepare and file a Renewed Motion and to incur the costs associated with such motion." (Id. at 12-13). Accordingly, Air Methods states that "the only issue is whether Mr. Russo's continued prosecution of this action constituted bad faith." (Doc. 34, at 13). Air Methods

3

then answers the question it posed by arguing that "Mr. Russo's knowledge that the
Complaint is legally frivolous, combined with his decision to nevertheless continue
prosecuting this matter, demonstrates his bad faith." (Id.).

In response, Plaintiff argues that Air Methods' Motion for Sanctions "should have
been filed ten months ago." (Pl.'s Br. in Opp. of Mot. for Sanctions, Doc. 38, at 2). Plaintiff
argues that if his suit was as frivolous as Air Methods claims, it would have been dismissed
by this Court at the time Air Methods and Local 109 moved to dismiss it. (Id.).

Plaintiff devotes much of his Brief to identifying the standard for determining whether
sanctions should be granted under Rule 11, but offers little to show why sanctions should
not be granted in this case. That is to say, the Plaintiff's brief does not show how, under the
objective standard of reasonableness which this Court must apply in determining whether
sanctions should be imposed under Rule 11, see, e.g., Mary Ann Pensiero, Inc. v. Lingle,
847 F.2d 90, 94 (3d Cir. 1988), Plaintiff had a basis to file suit.

Plaintiff does, however, rely upon Gaiardo v. Ethyl Corporation, 835 F.2d 479, 483
(3d Cir. 1987), where the Court limited the imposition of sanctions under Rule 11, stating:

> [i]t follows that Rule 11 sanctions are improper in situations which do not
> involve signing a paper. Thus, the Rule should not be invoked against an
> attorney who fails to dismiss a case after the opposing attorney submits
> evidence that a statute of limitations or res judicata bars the suit.

835 F.2d. at 484.

Air Methods, in its Reply Brief, notes that "although Pensiero does state that prompt
action is required under Rule 11, it does not set a time limit or require a Rule 11 motion for

sanctions be filed within a specific period time." (Air Methods Reply Br., Doc. 41, at 5). Air Methods argues that it moved for sanctions "promptly upon discovering a basis for doing so. Although it was immediately clear that Plaintiff's Complaint was unmeritorious, it did not become clear that Plaintiff and Mr. Russo violated Rule 11 until the completion of discovery." (Id.).

Air Methods thus argues that sanctions are appropriate against Plaintiff's counsel under 28 U.S.C. § 1927, since its counsel contacted Plaintiff's counsel after the close of discovery and asked that Plaintiff withdraw his Complaint because it was barred by the statute of limitations and no facts had been disclosed warranting the "tolling, estoppel, or alteration of the accrual date of Plaintiff's claim." Air Methods asserts Plaintiff's counsel "became hostile, refused to engage in the conversation, and abruptly terminated the telephone call." (Id. at 8).

Air Methods contends that Plaintiff's arguments in opposition to Air Methods' Motion for Summary Judgment were frivolous, unsupported by the applicable case law and together with Plaintiff's counsel's behavior, demonstrates Plaintiff's counsel's bad faith. Air Methods thus argues: "Mr. Russo's conduct demonstrates the unavoidable conclusion that he maintained this action for the sole purpose of harassing Air Methods and costing Air Methods the time and expense associated with defending this frivolous matter. Mr. Russo's behavior violated Section 1927. The Court must sanction Mr. Russo to deter his behavior." (Id. at 8-9).

Lastly, Air Methods argues that Plaintiff's counsel has a "history of sanctionable conduct" and cites several cases where Defendant contends that Plaintiff's counsel "has been warned by judges in this district as well as others that his behavior borders on Rule 11 violations." (*Id.* at 10).[1]

---

[1] The cases cited by Air Methods are *Knoll v. City of Allentown,* 2011 WL 4528336 (E.D. Pa. 2011), *aff'd,* 707 F.3d 406 (3d Cir. 2013); *Kern v. Schuykill Intermediate Unit Number 29,* 2010 WL 3632664 (M.D. Pa. 2010); *Schnell v. Allentown Housing Authority,* 2009 WL 3157329 (E.D. Pa. 2009); *Devine v. St. Luke's Hospital,* 5:08-CV-4216-JS (E.D. Pa. 2009), *aff'd,* 406 Fed.Appx. 654 (3d Cir. 2011); and *Helfrich v. Lehigh Valley Hospital,* 2005 WL 1715689 (E.D. Pa. 2005).

In *Knoll,* the District Court denied the City of Allentown's motion for sanctions, but in doing so, called plaintiff's suit a "silly case" and characterized her motion for a new trial as "patently frivolous." 2011 WL 4528336, at *1-2.

In *Kern,* Judge Kane of this Court described an objection by plaintiff to a finding in a report and recommendation from a magistrate judge as to whether a squirt gun could be viewed as a weapon on school property as "without merit, to the point of being frivolous." 2010 WL 3632664 at *2. Plaintiff had brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the Americans With Disabilities Act, 42 U.S.C. § 1201.101, *et seq.,* and the Due Process Clause of the Fourteenth Amendment after being disciplined for being involved a water gun fight in the halls of the defendant's school with other employees.

In *Schnell,* the plaintiff brought suit alleging, *inter alia,* that she had been deprived of a property interest in her employment without due process of law and founded her property interest upon the existence of a collective bargaining agreement. The agreement did not exist. The Court was moved to state that it was

quite disturbed over the conduct of Plaintiff's counsel in bringing this suit. It is apparent to the Court that if counsel had conducted the most minimal investigation before filing this suit, he would have learned that no collective bargaining agreement ever existed and his client was at all times at an-will employee. The lack of investigation into the facts is illustrated by language counsel wrote in his Opposition to Defendants' Motion to Dismiss. Specifically, Plaintiff states "[t]hus, because the collective bargaining agreement between the City and the Plaintiff's union includes a 'for-cause' termination provision. . . . the Court should find that the Plaintiff had a protected property interest in his employment with the city. [*sic*] was a member of the City employees' collective bargaining unit, which thereby gave her a property interest in her employment." . . . Since the Plaintiff in this case is a "he" and the Defendant is the Allentown Housing Authority and not a "City", it is obvious to the Court that Plaintiff's counsel merely lifted this language from another brief in another case without investigating whether it applied to the facts of this action. In the future, we trust that

Plaintiff's counsel will be more mindful of the strictures of Rule 11 of the Federal Rules of Civil Procedure before he files a wrongful discharge case.

The Court is even more disturbed by the attempt of Plaintiff's counsel to "end run" a previous decision by this Court by bootstrapping claims from a previously dismissed case into this case by amending the complaint. Again, the Court wishes to remind counsel that such actions border on violations of Rule 11.

2009 WL 3157329 at *2-3.

In *Devine*, the Court of Appeals affirmed the grant of attorneys' fees to the prevailing defendant where "the District Court found that Devine's Title VII claim was 'frivolous, unreasonable, or without foundation' because she admittedly failed to exhaust her administrative remedies before bringing her claim." 406 Fed. Appx. at 656. The District Court noted that:

Devine's counsel, Donald P. Russo, admitted to the Court he had simply taken his client at her word she had filed an EEOC charge, and had not investigated her claim, even when the viability of the claim was brought into question by St. Luke Hospital's motion to dismiss. Neither in his responsive brief nor at the hearing did Russo present any evidence to support his argument [that] the Title VII claim had not been frivolous. He also did not present any evidence an EEOC charge had been filed.

(Doc. 41-1, at 2 n.1). The District Court declined to sanction Devine's counsel under Section 1927 because it found no bad faith.

In *Helfrich*, the Court in denying the plaintiff's motion for reconsideration of the entry of summary judgment against him, stated:

[T]he Court is constrained to note that Plaintiff's submissions have a recurring and disquieting feature in terms of the characterization of the controlling factual record and controlling case law. Apparently succumbing to an advocacy style of "my client – right or wrong," counsel's descriptions of both facts and law are very frequently presented as counsel subjectively wishes them to be rather than as they objectively exist. Throughout this matter, counsel neglected to analyze and present the established record facts (or acknowledge a lack thereof) and failed to disclose controlling law to be applied when the facts or case law are not otherwise helpful to his client.

2005 WL 1715689 at *1 n.1.

Air Methods argues that "an attorney's history of similar behavior is one factor to be considered when awarding attorney's fees as a sanction," citing to *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294 (3d Cir. 1996). In *Zuk*, the Court made reference to the use of evidence of an attorney's prior behavior in its directive that district courts "have been encouraged to consider mitigating factors in fashioning sanctions, most particularly the sanctioned party's ability to pay." 103 F.3d at 301. In this regard, the Court noted other examples of factors they might consider in mitigation, "including whether the attorney

With the respective positions of the parties as to the appropriateness of sanctions

having been summarized, we turn to a statement of the governing law and its application to

this case.

## A. Motion for Sanctions under Rule 11

Federal Rule of Civil Procedure 11(b) provides as follows:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an appropriate

sanction on any attorney, law firm, or party that violated the rule or is responsible for the

---

has a history of this sort of behavior, the defendant's need for compensation, the degree of frivolousness and the 'willfulness' of the violation." *Id*.

violation." *Id.* at 11(c)(1).[2] "In scrutinizing a filed paper against these requirements, courts

must apply an objective standard of reasonableness under the circumstances. The wisdom

of hindsight should be avoided; the attorney's conduct must be judged by what was

reasonable to believe at the time the pleading, motion, or other paper was submitted."

*Pensiero,* 847 F.2d at 94 (internal citations and quotation marks omitted).

"Rule 11 sanctions should not be viewed as a general fee shifting device. By and

large federal courts are bound by the 'American Rule,' requiring parties to shoulder their

own legal expenses." *Gaiardo,* 835 F.2d at 483. "The goal of Rule 11, therefore, is . . .

correction of litigation abuse." *Id.* Further, the Court in *Gaiardo* made clear:

> It follows that Rule 11 sanctions are improper in situations which do not
> involve signing a paper. Thus, the Rule should not be invoked against an
> attorney who fails to dismiss a case after the opposing attorney submits
> evidence that a statute of limitations or res judicata bars the suit. *Cf.
> Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5th Cir. 1987)
> (imposing continuing duty but insulating attorney who did not sign papers
> from Rule 11); *Van Berkel v. Fox Farm and Road Mach.,* 581 F.Supp. 1248
> (D.Minn.1984) (imposing continuing duty).

*Id.* at 484.

"Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or

motion is patently unmeritorious or frivolous.'" *Ario v. Underwriting Members of Syndicate

53,* 618 F.3d 277, 297 (3d Cir. 2010) (quoting *Doering v. Union Cnty. Bd. of Chosen

Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988)).

---

[2] The clear language of the Rule allows the Court discretion to decide whether to impose
sanctions. *See also* Fed. R. Civ. P. 11(b), (c) advisory committee's note, 1993 amendment ("Whether a

> The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases; and 3) increase tensions among the litigating bar and between the bench and the bar.

*Doering*, 857 F.2d at 194 (internal citations and quotation marks omitted).

Moreover, "[f]ee-shifting is but one of several methods of achieving the various goals of Rule 11. District courts should, therefore, consider a wide range of alternative possible sanctions for violations of the rule." *Id.* (internal citations omitted). In choosing the proper sanction, the Court should choose "'the minimum that will serve to adequately deter the undesirable behavior.'" *Id.* (quoting *Eastway Constr. Corp. v. City of New York*, 637 F.Supp. 558, 565 (E.D.N.Y. 1986)).

Judging the conduct of Plaintiff's counsel by what was reasonable to believe at the time the Complaint in this matter was submitted, the Court finds that there is a compelling factual basis on which to find that Plaintiff and Plaintiff's counsel knew or should have known that their cause of action accrued and the statute of limitations began to run when Plaintiff received the April 5, 2012 e-mail and attached letter of that same date from Local 109 wherein it informed the Plaintiff that the Executive Board of Local 109, after carefully considering the merits of the Plaintiff's grievance concerning his termination and after

---

violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court . . . .").

consulting with his legal counsel, had decided that it would not take the Plaintiff's grievance to arbitration or take any further action on the Plaintiff's behalf.

At no time did the Plaintiff offer an argument that the statute of limitations governing his suit against Local 109 and Air Methods was something other than the six-month limitations period which, under well-established case law, governed his suit. Moreover, as noted in this Court's Order of June 26, 2014 (Doc. 19), wherein this Court converted Defendant Air Methods' Motion for Judgment on the Pleadings to a Motion for Summary Judgment and allowed a period of discovery limited to material pertinent to the Defendant's summary judgment motion, the Plaintiff submitted a document entitled the Declaration of Robert Moore which makes specific reference to the April 5, 2012 letter of Local 109 and implicitly acknowledges the Plaintiff's receipt of that letter. The Declaration of the Plaintiff quotes from the April 5, 2012 letter of Local 109, and states in response to it, he "emailed Dan McDade on April 19, 2012, asking the Union to please reconsider the refusal to deny [sic] my grievance." (Doc. 12-1, ¶¶ 2, 4, 5). This Court noted in the aforementioned Order that while it "might reasonably conclude that the authenticity of the April 5, 2012 letter and its receipt by the Plaintiff are not in dispute, neither Air Methods' submission of the letter as an attachment to its Brief nor the Plaintiff's submission of a Declaration as an attachment to its Brief in opposition to Air Methods' Motion comport with the requirements of [*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), or *In Re. Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410 (3d Cir. 1997)]." (Doc. 19, at 3 n.1).

The Plaintiff's Brief in Opposition to Air Methods' Motion for Summary Judgment acknowledges the application of the six-month statute of limitations to the Plaintiff's cause of action and acknowledges the principle that the limitations period "begins to run when the Plaintiff receives notice that the Union will proceed no further with the grievance." (Doc. 36, at 5) (citing *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986)).

Yet, Plaintiff argued that his case somehow fell within the ambit of *Childs v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees*, 831 F.2d 429, 436 (3d Cir. 1987), where the Court held that a claim for breach of the duty of representation does not accrue when the union continues to actively represent an employee and offers "rays of hope" to the employee that his case will ultimately be pursued by the union. (*Id.* at 7).

Was it objectively reasonable for the Plaintiff and Plaintiff's counsel, at the time that suit was filed in this case on December 16, 2013, to believe that because the Plaintiff had issued an e-mail on April 19, 2012 to Local 109 asking it to reconsider its decision not to pursue his grievance, an e-mail to which the Plaintiff never received a response, the Union continued to actively pursue his grievance or to even actively consider its pursuit? The short answer is that it was not. The Plaintiff's claims and other legal contentions were not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law. Further, the Plaintiff's factual contentions lacked any evidentiary

12

support at the time of the filing of the Plaintiff's Complaint and after discovery was undertaken in accordance with this Court's Order of June 26, 2014.

This Court granted Plaintiff a period of discovery because it had converted the Defendant's Motion for Judgment on the Pleadings to one for summary judgment and, in such circumstances, the Court must provide both notice of its intention to convert the motion and allow an opportunity to submit materials admissible in a summary judgment proceeding. Failure to do so is reversible error. *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989).

Nonetheless, the essential facts giving rise to Plaintiff's claim were known to Plaintiff and Plaintiff's counsel by virtue of the Union's April 5, 2012 e-mail and letter which unequivocally stated the Union would take no further action with respect to the Plaintiff's grievance over his discharge and would not process his grievance to arbitration. The Plaintiff filed a Praecipe for Writ of Summons on December 16, 2013, 20 months and 11 days after the issuance by the Union of its April 5, 2012 e-mail and letter to the Plaintiff informing him that it would proceed no further with his grievance and 19 months and 27 days after the Plaintiff's April 19, 2012 e-mail to the Union asking that it reconsider its decision.

As this Court noted in its Opinion entering summary judgment in favor of Air Methods and Local 109:

> In short, there is no evidence of record to support the Plaintiff's contention that he reasonably believed that the Union was continuing to represent him beyond the Union's issuance of its April 5, 2012 e-mail and letter informing

him in the clearest language that the Union was not going to pursue his grievance further or take any further action on his behalf.

Doc. 44, at 25.

Thus, this is a case where the Plaintiff's claim was "patently unmeritorious or frivolous" so that some form of sanction is appropriate. *Ario*, 618 F.3d at 297.

### B. **Defendants' Motion for Sanctions under 28 U.S.C. § 1927**

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 operates as an exception to the general rule of litigation in the United States, the "American rule." "Under the 'American rule,' each party must bear its own expenses during litigation. Attorneys' fees are not ordinarily recoverable by the prevailing litigant in the absence of statutory authorization." *Browning v. Kramer*, 931 F.2d 340, 344-345 (5th Cir. 1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Indeed, even Section 1927 "does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total costs of the litigation." *Id.* at 345 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 n. 3, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).

Instead, "the principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re Schaefer Salt Recovery, Inc.*,

542 F.3d 90, 101 (3d Cir. 2008) (internal quotation marks omitted). The sanctions "are limited to the costs that result from such [intentional and unnecessary] delay." *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.*, 287 F.3d 279, 288 (3d Cir. 2002). The Third Circuit Court of Appeals has stated, "courts should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice." *Id.* "The power to sanction under § 1927 necessarily 'carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *Id.* (quoting *Mone v. Commn'r of Intern. Revenue*, 774 F.2d 570, 574 (2d Cir. 1985)).

"[Section] 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002). The Third Circuit has held that, unlike Rule 11 sanctions, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). "As such, under § 1927, an attorney's conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Id.* (internal quotation marks omitted). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known

this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential*, 278 F.3d at 188.

"However, that finding need not be explicit. An implicit finding of bad faith will support sanctions just as well so long as it is not an abuse of discretion, not based upon clearly erroneous factual findings, and not based upon an error of law." *Id*. at 189 (affirming district court judge's award of sanctions "based [on] his finding of the requisite bad faith and vexatious conduct on the totality of the campaign Malakoff waged during the course of this litigation, not upon any single maneuver."). "But there are distinctions between Rule 11 . . . and § 1927, distinctions which make a difference." *Schaefer*, 542 F.3d at 101. For instance, "§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case." *Id*. (emphasis in original). As such, the Third Circuit concluded that the supervisory rule pertaining to Rule 11 sanctions did not apply to Section 1927 sanctions. *Id*. at 101-102 ("Unlike Rule 11, the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied.").

The Court is reticent to second guess counsel's tactical decisions and is cautioned by the Supreme Court's warning in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L.Ed.2d 648 (1978). In *Christiansburg*, the Court stated,

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not

ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id*. at 421-422.

Air Methods' Motion for Sanctions under § 1927 must fail because it does not sufficiently demonstrate bad faith. Air Methods does not argue that Plaintiff's counsel acted in an intentionally harassing or dilatory manner. Absent such an assertion, awarding sanctions would not serve the "principal purpose of sanctions under § 1927[.]" *See Schaefer*, 542 F.3d at 101.

Section 1927 sanctions are only appropriate where an attorney's actions are so outrageous and obvious to the court that it "need not use hindsight nor *post hoc* analysis" to conclude that counsel's actions were intentional and improper. *Macheska v. Thomson Learning*, 347 F.Supp.2d 169, 175-78, 181 (M.D. Pa. 2004) (granting § 1927 sanctions where counsel's misconduct was "manifest and obvious" and where the attorney proceeded with discovery, resulting in the opposing party "incur[ring] significant costs," despite the attorney's "belief that the 'case should be withdrawn,'" which he stated in a fax to the court).

In this case, Plaintiff's counsel did not multiply the proceedings in an unreasonable and vexatious manner and did not engage in intentional misconduct. Rather, Plaintiff's conduct in pursuing this case after the initial pleadings appears to result from "misunderstanding, bad judgment, or well-intentioned zeal." *Grider*, at 142. Further, while

Plaintiff's claims with respect to the commencement and expiration of the statute of

limitations in this case were meritless and counsel knew or should have known this, it

cannot be said that "the motive for filing the suit was for an improper purpose such as

harassment." *In re Prudential*, 278 F.3d at 188. Accordingly, the Defendants' Motion for

Sanctions pursuant to 28 U.S.C. § 1927 will be denied.

## C. Determination of Appropriate Sanction

In *Zuk v. Eastern Pennsylvania Psychiatric Institute*, the Court gave the following

directive with respect to the determination of the appropriation sanction under Rule 11:

> This court has instructed the district courts that "[f]ee-shifting is but one of
> several methods of achieving the various goals of Rule 11," that they should
> "consider a wide range of alternative possible sanctions for violation of the
> rule," and that the "district court's choice of deterrent is appropriate when it is
> the *minimum* that will serve to *adequately* deter the undesirable behavior."
> *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d
> Cir. 1988).
>
> Thus, the district courts have been encouraged to consider mitigating factors
> in fashioning sanctions, most particularly the sanctioned party's ability to pay.
> *Id.* at 195. Courts were also given examples of other factors they might
> consider, including whether the attorney has a history of this sort of behavior,
> the defendant's need for compensation, the degree of frivolousness, and the
> "willfulness" of the violation. *Id.* at 197 n.6.

103 F.3d 294, 301 (3d Cir. 1996) (italics in the original).

Here, Air Methods and Local 109 seek payment of the attorney's fees and costs they

incurred in defending against Plaintiff's claims. (Doc. 33, at 4).

In determining the appropriate sanction in this case, this Court finds the reasoning in

*Soo San Choi v. D'Appolonia,* 252 F.R.D. 266 (W.D. Pa. 2008), to be persuasive. There, the

18

Court found that plaintiff's counsel violated Rule 11 by proceeding against the defendant,

Dura-Bond "without a factual basis for doing so." *Id.* at 267. The District Court adopted the

report and recommendation of the magistrate judge that the motion for sanctions filed by

Dura-Bond under Rule 11 be granted but that monetary sanctions were "inappropriate." *Id.*

Instead, the Court imposed the sanction of "public acknowledgment" as had been

recommended by the magistrate judge. In doing so, the Court wrote:

> Sanctions such as publication or judicial reprimand have long been
> recognized as available alternative measures. *See Doering,* 857 F.2d at 194
> ("Other sanctions that could be appropriate in some circumstances, and that
> may take the place of a monetary award, include publication, an order barring
> an attorney from appearing for a period of time, reprimand, dismissal of
> baseless claims or defenses, or even ordering 'the attorney[ ] who violated
> the rule to circulate in [his or her] firm a copy of the opinion in which the
> pleadings were criticized.'") (quoting *Gaiardo v. Ethyl Corp.,* 835 F.2d 479,
> 482 (3d Cir. 1987)).

*Id.*

The Court, relying on *Zuk,* emphasized that the determination of the appropriate

sanction is to be guided by "equitable considerations" and chief among them "is the

offending party's ability to pay." *Id.*

The Court closely tracked the analysis offered in *Zuk,* noting that mitigating factors to

be taken into account include:

> (1) the attorney's history of filing frivolous actions or alternatively, his or her
> good reputation, (2) the defendant's need for compensation, (3) the degree of
> frivolousness, recognizing that cases do lie along a continuum, rather than
> neatly falling into either the frivolous or non-frivolous category, and that
> Congressional intent, in promulgating Rule 11 sanctions, was not to chill an
> attorney's enthusiasm or creativity in pursuing factual or legal theories, (4)

whether the frivolousness also indicated that a less sophisticated or expensive response by the other party was required, and (5) the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act.

*Id*. at 267-268 (quoting *Zuk*, 103 F.3d at 197 n.6).

The application of the principles quoted in *Soo San Choi* above, persuades this Court that a public declaration is the least severe measure necessary to discourage similar conduct by counsel in the future and promote deterrence by others. An award of attorney's fees would go further than necessary to satisfy the purpose of Rule 11. In this Court's view, it is sufficient that counsel in this case as well as counsel generally should understand that the law is well settled with respect to the application of the six-month statute of limitations governing hybrid actions for wrongful discharge and breach of the duty of fair representation. This specifically includes the well established rule of law that the six-month limitations period "commences when the plaintiff receives notice that the Union will proceed no further with the grievance." *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 260 (3d Cir. 1990).

While in this case, it was or should have been clear to Plaintiff and Plaintiff's counsel at the outset that the statute of limitations had expired long before they initiated suit, the decision to do so appears to be one of bad judgment or recklessness rather than bad faith.

Nor does this Court see any useful purpose in imposing monetary sanctions upon the Plaintiff or Plaintiff's counsel. As far as the Court can determine, Plaintiff's counsel is a solo practitioner so that the requirement that Plaintiff's counsel reimburse Air Methods for its

attorney's fees is difficult to reconcile in a balancing of the equities in this case. Further, nothing in the submissions of Air Methods presents a claim of severe economic harm as a result of the attorney's fees incurred in this case that would cause the scales to tip in favor of an award of attorney's fees to Air Methods or Local 109.

Plaintiff's counsel's litigation history is troubling but it is this Court's view that a public acknowledgment of a Rule 11 violation nonetheless presents a significant sanction. As stated in *Soo San Choi*, the sanction "provides an express determination of a violation which carries with it substantial professional embarrassment. It also provides an undeniable prior violation should counsel ever have to defend against a Rule 11 challenge in the future. Such a measure clearly cannot be viewed as meaningless or inconsequential." 252 F.R.D. at 268.

### III. Conclusion

For these reasons, the Motion for Sanctions of Air Methods, joined in by Local 109, will be granted in part and denied in part. It shall be granted to the extent that it seeks a determination that Plaintiff's counsel violated Rule 11 by proceeding against Air Methods and Local 109 without a factual basis for doing so in light of the applicable statute of limitations and facts indicating when Plaintiff's cause of action accrued. The Motion shall be denied in all other respects. The sanction that shall be imposed is a public declaration of a Rule 11 violation.

A separate order follows.

21

Robert D. Mariani
United States District Judge